*In re* CONNERY'S ESTATE.

CONNERY *v.* CONNERY.

1. WILLS — ATTESTATION — WITNESSES — EFFECT OF ATTESTATION CLAUSE.

   If the attestation clause affords any presumption of the facts therein stated, it is overcome by the testimony of a subscribing witness to a will that he did not read or know the contents of the clause, that testatrix was not in his presence when he signed it, and that he did not remember seeing her sign the instrument.

2. SAME.

   Where one subscribing witness contradicted the other relative to the facts stated in the attestation clause, it was for the jury to determine whether or not the will was properly executed.

3. SAME—IMPEACHMENT.

   The court erred in charging the jury that it made no difference whether the will was executed on a different day than

the date it bore, which proponent testified in probate court was the date of its execution, although on appeal he stated that it was executed on the morning of the following day; since the contradictory testimony concerning the same might be considered by the jury as affecting the credibility of proponent.

Error to Saginaw; Gage, J. Submitted June 27, 1910. (Docket No. 152.) Decided September 29, 1911.

James A. Connery presented for probate an instrument purporting to be the will of Christina Sutherland Connery, deceased. From an order admitting the same to probate, William S. Connery, contestant, appealed to the circuit court, where the order was affirmed. Contestant brings error. Reversed.

*Fred L. Eaton* (*J. H. Davitt*, of counsel), for appellant.

*Frank E. Emerick* (*Emmet L. Beach*, of counsel), for appellee.

McALVAY, J. This case is brought to this court by the contestant of the will of deceased to review a judgment of the circuit court for Saginaw county, duly entered upon a verdict of a jury in favor of the proponent admitting such will to probate.

The following are the material facts in the case, and are not disputed: Christina Sutherland Connery, the testatrix, died January 18, 1908, leaving surviving her a husband, James A. Connery (who is proponent of the will), two sons, William S. Connery, contestant, and J. Alfred Connery, all of Saginaw, Mich., and also a brother, John Sutherland, of Virginia, Minn. The day after her death, the proponent stated to the two sons that there were two wills left by the deceased, one of which practically cut off the elder son, W. S. Connery, and the other divided the property equally between the sons, and that it was her in-

structions to keep the wills without probating for one year.

Nothing was done about probating the estate or proving a will until after the year elapsed, when, in the latter part of January, 1909, the two sons went together to their father, and asked him to produce the wills, and were told that he would not get them then, but might do so the next day. The following morning, however, he went away without producing the wills. The two sons thereupon, on January 29, 1909, executed an agreement for the purpose of carrying out the wishes of their mother as they understood them to be, and authorizing the probate court to distribute and administer the estate in accordance therewith. The proponent filed the petition for the probate of the will in controversy in the probate court for Saginaw county, February 4, 1909, and contestant filed his objections, claiming that it was not the will, nor the last will, of deceased, and was not executed on the day it bore date, nor with the formalities required by law. And the contestant also offered the agreement with his brother in evidence, and on its rejection filed the additional objection based upon the refusal of the probate court to receive said agreement in evidence. The will was allowed, and an appeal was taken to the circuit court for Saginaw county, where the will was sustained.

The will was dated August 15, 1904, and by it testatrix devised her property in the city of Saginaw (consisting of the Connery Flats, comprising a number of apartment houses located at the corner of Washington and Johnson streets) to her younger son, J. Alfred Connery, Jr., subject to a life estate in the same to her husband, the proponent, and also provided for a payment to contestant, the elder son, of $500 a year for four years, with the statement that this was in lieu of a larger sum because he had already had several thousand dollars. The will also devised real estate in Virginia, Minn., to the younger son, subject to a life estate of her brother, John Sutherland, and appointed the two sons executors of the will, provided

the younger son should be of age when the will became operative.

The will was drafted in January or February, 1902, by Alfred Newton, of Saginaw, Mich., who died in November, 1902, and it was claimed by proponent that testatrix preserved this draft, and on the 15th of August, 1904, he filled in the date at her request, and that the will was then executed in his presence and the presence of the other witness, Dennert. He testified that he thought that she executed two other wills after this one and kept them in a tin box, in the joint control of himself and testatrix until after her death, and in his exclusive control afterwards.

The witness Dennert, whose name appeared as subscribing witness to the will, occupied a room in one of the apartments of the Connery Flats, and testified that it was his signature upon the will, but that he had no recollection of the testatrix being present when he signed, nor of her signing the will, nor of seeing her signature upon the will, and that he did not know the contents of the instrument signed, neither did he read the will nor the attestation clause. He testified that Mr. Connery, the proponent, came to his room in the evening, and asked him to step downstairs and sign a paper, purporting to be a will; that he accompanied him to the Connerys' private room, where Mr. Connery, the proponent, spread out the papers and explained the object, after which witness signed. It was the only visit he ever made to that room. He did not remember the date, but did remember that in 1905 (a year later) he witnessed another will, which the testatrix signed, and recalls the circumstances of that will and the names of the parties present, and remembers "very distinctly that he never signed any will in the company of the proponent except these two." This witness was holding a position as chief clerk of R. G. Dun & Co.. and had had 18 years' business experience with that firm; and was quite well acquainted with the testatrix. He testified positively that he signed in the evening.

The proponent, who was the other witness to the will

(and a beneficiary), likewise testified in the probate court that he believed that the will was executed in the evening. It was not claimed in the probate court that the will was executed in the morning before the testatrix went away, but both witnesses testified that to the best of their recollection it was executed in the evening. Proponent also testified that the will was executed by the testatrix in the presence of himself and Mr. Dennert, both of whom signed it in the presence of the testatrix, on the 15th day of August, 1904. The testatrix left her home on August 15, 1904, between 7 and 8 a. m., to take a train for Minnesota.

Witness Dennert testified that the paper he signed was placed on a chiffonier about the height of his arm, while proponent testified that it was signed at a little table at which Mrs. Connery was sitting when Mr. Dennert and he came in.

There was no proof of the contents of the will of 1905, and proponent states that he does not know what became of it, and never saw any other will after the death of his wife except the one offered in evidence. He states:

"We kept all her papers in this little box, and there was no other place until I found this will;" and "the key was always kept in the drawer or chiffonier of hers. That is where the key was if either of us wanted to use it."

In the probate court proponent testified that he did not file the will for probate until February, 1909, because he was not able to find it, and admitted that he lied to his sons in telling them that their mother's wish was that the will should not be probated for one year. He testifies that he did not know until he offered the will for probate that he could not take under it because he was a witness.

The genuineness of the signature is not disputed. The due execution of a later will was proved by both witnesses thereto, and was admitted by proponent. There was a sharp dispute in the case as to whether this will was duly executed at the time claimed by proponent in the presence of the witnesses. He claimed that it was in the morning

of August 15, 1904, just before testatrix took the train for Minnesota. That she left on that morning between 7 and 8 o'clock is fixed by all the testimony. Witness Dennert testifies positively that he signed this will with proponent, giving minutely all the circumstances. He is absolutely disinterested and a trained business man. He says that he does not remember that testatrix was present. He says he signed standing at a chiffonier with the paper resting on it. Proponent swears that testatrix was there, and Mr. Dennert signed at a small table where she sat. Witness Dennert did not read the will or the attestation clause, and did not know their contents.

Contestant contends that the court erred in charging the jury:

"It is not important that Mr. Dennert, one of the subscribing witnesses to the will, claims that he does not remember that Mrs. Connery was present at the time when he signed as a subscribing witness. He has signed an attesting clause (stating its substance), and, in view of that fact, the court is of the opinion that there is a presumption that he signed it in the manner in which he has stated he signed it. * * * The due execution of a will may be shown even against the direct testimony of subscribing witnesses. By subscribing his name, the witness, in fact, certifies to his knowledge of the mental capacity of the deceased, and of the facts to which he certifies by signing his name below that certificate."

It is claimed by contestant that by this charge the court, in effect, instructed the jury that the signing of such clause was a conclusive presumption its recitals were true. The court also charged the jury generally as to the necessary requirements to the valid execution of a will, but it is claimed that this was given in such terms as would lead the jury to understand that the witness need not know that it was a will, be requested to sign it as a will, or be actually in the presence of the testatrix, and the substance of the paragraph quoted was repeated. The entire charge given upon this proposition must be considered, in order to determine whether the jury was fairly

instructed. Proponent, in justification of this charge, relies upon the case of *Abbott* v. *Abbott*, 41 Mich. 540 (2 N. W. 810). We do not think the case decisive of the question here presented. There the contention was that the jury should have been directed to find against the will because it was not proved by both witnesses as to the various statutory requisites. Here the objection is that the court did not allow the jury to consider the testimony of Dennert except as to his signature. He was the only disinterested witness in the case, a man of large experience, and had testified sharply contradicting Mr. Connery, Sr., as to the time of the execution of this will and the facts of signing as a witness. He was absolutely accurate and uncontradicted as to all the details of the execution of a later will by her, and positive as to her presence. The witness Connery changed his testimony given in the probate court. There he agreed with witness Dennert that this signing occurred in the evening. He testified in the circuit court that it was in the morning, just before she started for Minnesota on the train. In the case relied on (*Abbott* v. *Abbott, supra*), this court, speaking of subscribing witnesses, said:

"Their evidence is not conclusive either way, nor does the law presume that they are either more or less truthful than others."

It was further said:

"It presumes that they had, when they signed, full knowledge of what they were doing, and, in case they are dead, their attestation when proved is *prima facie* evidence that all was done as it should be. But in all contested will cases the case is open for general witnesses, and, when the testimony is all in, each witness is credited according to the impression he leaves of candor and intelligence, and not according to his being or not being an attesting witness."

The witness Dennert swears that he never read the attestation clause or knew its contents, which overcomes any presumption which may be claimed from the words

above quoted, if they apply to any except uncontested cases, which we do not admit. The last paragraph indicates that all of the testimony of a subscribing witness is for the consideration of the jury.

We think that the portions of the charge objected to, taken as a whole, as applied to the facts of this case, were erroneous and misleading. Immediately after the foregoing portion of the charge had been given, counsel for contestant said to the court:

" I wish to make the further objection to that, that the mere signing by him of the attestation clause would not prevent the evidence being weighed by the jury as to whether Mrs. Connery was in Saginaw or not."

This statement can be considered under these circumstances in effect a request to the court to so charge. It was so understood by the court as appears from what immediately follows in the record:

" *The Court:* I have already said, gentlemen of the jury, and I have already stated to you, that if consistent with this evidence you find that that instrument was executed on some day prior to the time when Mrs. Connery went to Virginia, State of Minnesota, whether it was upon that particular day or not, it is her will just the same."

Error is assigned upon this charge.

Proponent in the circuit court contended that this will was executed on Monday morning August 15, 1904. For reasons best known to himself, he has changed his positive testimony as to this time given in probate court, which was identical with the testimony of Dennert. This portion of the charge as stated had already been given at greater length, which is included in another assignment of error. They will stand or fall together. The time of the execution of this will had been considered as vitally important by proponent, as has already been stated. These charges were misleading in effect, charging that it made no difference in this case when the will was executed. It did make a difference as bearing upon the credibility of proponent, and therefore upon the probabil-

ity as to whether the will was executed as required by the statute.

It is claimed by contestant that the will on its face showed erasures and changes of dates, and a red line in ink drawn through the Christian name of the signature of testatrix indicating a revocation of the will. The court refused to allow the question to be submitted to the jury, holding that there was no evidence to warrant it. We do not know what the evidence was, and the will is not returned with the record. No exception was taken, and no error is assigned upon the ruling.

But one other question raised by the assignments need be mentioned, and that relates to the admission of the extrajudicial statements of proponent, relative to the contents of the later will, made to his sons on the morning after the mother's death. It will not be necessary to state and discuss them. In our opinion they were not admissible, under the decisions of this court, and their exclusion was not erroneous.

The subject-matter of the contents of this will and its history would have been proper cross-examination of proponent.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial ordered.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.